UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TRUMAN BANK 401(K) PROFIT SHARING PLAN, et al., ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 4:07CV01163 ERW |
| ) | |
| ROBERT LEVIN, et al. ) | |
| ) | |
| Defendant(s). ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendants Robert L. Levin, Kay Levin, Thomas Levin, Donna M. Truka and John A. Crawford's ("Defendants") Motion to Dismiss Counts II and III of Plaintiffs' Complaint [doc. #9].

**I. FACTUAL BACKGROUND**[1]

Plaintiffs Kraus and Heutel are trustees of the Truman Bank 401(k) Profit Sharing Plan (the "Truman Plan"), an employee pension benefit plan.[2] Defendants are former plan participants[3]

---

[1]This matter is before the Court on a Motion to Dismiss, therefore the facts are taken from the Plaintiffs' Complaint.

[2]There are two types of employee benefit plans under ERISA, welfare plans and pension plans. *See* 29 U.S.C. § 1002(3). An "employee pension benefit plan" is defined as:

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program (i) provides retirement income to employees, or (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond, regardless of the method of

1

and plan trustees. Defendants Robert Levin, Kay Levin, and Thomas Levin (the "Levin Defendants") are former employees of Keystone Bank and participated in the Employee Savings and Profit Sharing Plan of Keystone Bank (the "Keystone Plan"). By way of Truman Bank's acquisition of Keystone Bank, the Keystone Plan was succeeded by the Truman Plan. Truman Bank is the Plan Sponsor and Administrator of the Truman Plan.[4] Defendants Robert Levin,

---

       calculating the contributions made to the plan, the method of calculating the
       benefits under the plan or the method of distributing benefits from the plan.

29 U.S.C. § 1002(2)(A)(i)&(ii).

    [3]Pursuant to the provisions of ERISA, a "participant" is:

       any employee or former employee of an employer, or any member or former
       member of an employee organization, who is or may become eligible to receive
       a benefit of any type from an employee benefit plan which covers employees of
       such employer or members of such organization, or whose beneficiaries may be
       eligible to receive any such benefit.

29 U.S.C. § 1002(7).

    [4]Under ERISA, the term administrator means:

       (i) the person specifically so designated by the terms of the instrument under which
       the plan is operated; (ii) if an administrator is not so designated, the plan sponsor;
       or (iii) in the case of a plan for which an administrator is not designated and a plan
       sponsor cannot be identified, such other person as the Secretary may by regulation prescribe.

29 U.S.C. § 1002(16)(A).

The term plan sponsor means:

       (i) the employer in the case of an employee benefit plan established or maintained
       by a single employer, (ii) the employee organization in the case of a plan
       established or maintained by an employee organization, or (iii) in the case of a plan
       established or maintained by two or more employers or jointly by one or more
       employers and one or more employee organizations, the association, committee,
       joint board of trustees, or other similar group of representatives of the parties who
       establish or maintain the plan.

Donna Truka, and John Crawford ("Trustee Defendants") served as Trustees of the Keystone Plan, before it was succeeded by the Truman Plan. At all times relevant to this lawsuit, Qualified Plan Services, Ltd ("QPS") served as the third party administrator and recordkeeper for the Keystone Plan, and Buckingham Asset Management, Inc. ("Buckingham") served as investment advisor for the Keystone Plan. Robert Levin is former president of Keystone Bank and terminated employment with Keystone Bank on February 28, 2006.[5]

Under the terms of the Keystone Plan, the last day of each calendar quarter was a Valuation Date. The Keystone Plan's accounts were recorded by QPS in terms of dollars, rather than shares, as directed by Article V of the Keystone Plan, on the Valuation Date. Even though all valuation was recorded in dollars, plan participants were permitted to receive in-kind distributions, in the form of shares, upon termination of participation in the plan. Plaintiffs allege in their complaint that the terms of the plan required that the in-kind distribution, the number of shares distributed, be determined based on the share price at the date of distribution, not the share price as of the Valuation Date.

The Levin Defendants elected to receive complete in-kind distributions from their accounts in the Keystone Plan. This case arises out of a discrepancy between the value of their Plan accounts on the Valuation Date and on the date of distribution. On March 31, 2006, a valuation of the Keystone Plan was undertaken, pursuant to Plan terms, and the value of the Defendants' accounts was established, in dollars. On April 27, 2006, QPS advised Buckingham

---

29 U.S.C. § 1002(16)(B).

[5]Truman Bankcorp, Inc., completed acquisition of Keystone Bank in May, 2006, following Robert Levin's resignation as President of Keystone Bank.

that the Levin Defendants' account values totaled $3,511,095.72. QPS provided dollar values, not shares, for each Defendant. On May 11, 2006, Buckingham converted the Levin Defendants' account dollar values, determined as of the March 31, 2006 Valuation Date, into shares of each DFA mutual fund, based upon March 31, 2006 share prices. These distributions were in the form of DFA mutual funds worth $3,659,134.36, on the date of distribution, and were made directly into the Levin Defendants Individual Retirement Accounts ("IRAs"). According to Plaintiffs, this resulted in an excess distribution to the Levin Defendants' IRA accounts of $105,958.61, due to an increase in DFA Fund share prices between March 31, 2006, the Valuation Date, and May 11, 2006, the distribution date.[6]

**II. PROCEDURAL HISTORY**

Plaintiffs filed suit against Defendants alleging three counts. Under Count I, Plaintiffs seek a declaration of the rights of the Plaintiffs under the Keystone Plan, predecessor in interest to the Truman Plan, with regard to valuation and distributions of in-kind distributions. Under Count II, Plaintiffs seek restitution to the Plan in the amount of the excess distributions, restoration to the Plan of any profits that have been made through use of these assets, and for costs and attorneys' fees under 29 U.S.C. §1132(g), against the Levin Defendants. Under Count III Plaintiffs allege that the Trustee Defendants were fiduciaries of the Plan at the time of the distribution to the Levin Defendants, and that the allowance of, or failure to prevent, the excess distributions constituted a

---

[6]Plaintiffs' Complaint states that the excess is due "to an increase in DFA Fund share prices between March 31 and May 9." *Pls.' Comp.*, ¶32. However, the Court is unsure of the significance of May 9, 2006. The Complaint states that the distribution took place on May 11, 2006, and later references the difference in share price between March 31, 2006 and May 11, 2006. *Pls. Comp.*, ¶33. The discrepancy in dates is not significant at this stage of the proceeding, and therefore will not be addressed again.

4

breach of fiduciary duty under 29 U.S.C. §§1104, 1109(a), and 1132(2). On July 24, 2007, Defendants filed a Motion to Dismiss Counts II and III for failure to state a claim; that motion is currently pending before this Court.

### III. LEGAL STANDARD

A complaint shall not be dismissed for failure to state a claim upon which relief can be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support" of a claim entitling him or her to relief. *Breedlove v. Earthgrains Baking*, 140 F.3d 797, 799 (8th Cir. 1998) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). In an order on a motion to dismiss, the court must assume that all allegations in the complaint are true and construe all reasonable inferences in the plaintiff's favor. *Hafley v. Lohman*, 90 F.3d 264, 267 (8th Cir. 1996) (citing *McCormack v. Citibank*, N.A., 979 F.2d 643, 646 (8th Cir. 1992)). The complaint "should not be dismissed merely because the court doubts that a plaintiff will be able to prove all of the necessary factual allegations. However, a complaint should be dismissed if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45-46.

"While, for most types of cases, the Federal Rules eliminated the cumbersome requirement that a claimant 'set out *in detail* the facts upon which he basis his claim,' Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion of entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 n.3 (2007) (citing *Conley*, 355 U.S. at 47) (emphasis added by *Bell Atlantic Corp.*). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp.*, 127 S.Ct. at 1964-65 (citing *Papasan v. Allain*,

478 U.S. 265, 286 (1986) (alterations in original)). Furthermore, "[t]he Court need not accord the presumption of truthfulness to any legal conclusions, opinions or deductions, even if they are couched as factual allegations." *Davis v. Bemiston-Carondelet Corp.*, 2005 WL 2452540, at *5 (E.D. Mo. Oct. 4, 2005) (citing *Silver v. H&R Block, Inc.*, 105 F.3d 394, 397 (8th Cir. 1997). "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp.*, 127 S.Ct. at 1965.

## IV. DISCUSSION

Defendants seek a judgment in their favor on Counts II and III of Plaintiff's Complaint. The Court will address each Count in turn.

### A. COUNT II

Under Count II of Plaintiffs' Complaint, Plaintiffs allege that they are entitled to equitable relief, in the form of restitution from Levin Defendants' IRA accounts, under the Employee Retirement Income Security Act ("ERISA").[7] Defendants assert that Plaintiffs seek legal relief, not available in equity and contravening Congress' directive in ERISA.

ERISA permits a civil action to be brought "by a participant, beneficiary or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain *other appropriate equitable relief*. . .." 29 U.S.C. § 1132(a)(3) (emphasis added). The Supreme Court, in *Great-West Life & Annuity Ins. Co. v. Knudson*, held that equitable relief in the form of the return of overpayments was permissible under ERISA. 534

---

[7]Plaintiffs' Complaint used the phrase "legal relief." However, Plaintiff subsequently acknowledged the error in terminology and requested "leave to amend the Complaint to reflect a recognized claim of equitable recoupment." This technical mistake in pleading does not preclude Plaintiffs' survival of Defendants' Motion to Dismiss.

6

U.S. 204 (2002). In *Great-West*, an ERISA plan brought an action for specific performance of a reimbursement provision contained in the plan. *Id.* at 208. Great-West sought to compel the plan beneficiary to make restitution to the plan for past medical treatment benefits, due to a recovery from a third party tortfeasor. *Id.* at 207-8. The beneficiary settled a tort action, in which defendants directly paid a Special Needs Trust established for the beneficiary's medical expenses and paid funds to the beneficiary's attorney and to various lien holders. *Id.* The Supreme Court, in *Great-West*, acknowledged that a plaintiff could seek restitution in equity, "ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Id.* at 213. However, the Supreme Court found that the action before it could not be characterized as equitable relief because it sought to impose personal liability on the beneficiary for benefits it had conferred upon her, which was a legal remedy. *Id.* at 214.

Restitution is generally considered an equitable remedy, however, both the Supreme Court and the Eighth Circuit have distinguished between equitable and legal restitution. *See Serboff v. Mid Atlantic Medical Services, Inc.*, 126 S.Ct. 1869, 1874 (2006) ("[N]ot all relief falling under the rubric of restitution was available in equity." (Internal citation and alteration omitted)); *Kerr v. Vatterott & Co.*, 184 F.3d 938, 944 (8th Cir. 1999). An "[equitable] restitutionary award focuses on the defendant's wrongfully obtained gain while a compensatory award focuses on the plaintiff's loss at the defendant's hands." *Kerr*, 184 F.3d at 944. In *Sereboff* the Supreme Court found that an ERISA plan's action to recover amounts paid for medical expenses from a plan beneficiary was a proper action for equitable relief under ERISA where the plan sought recovery through a constructive trust on a specifically identifiable fund. 126 S.Ct. 1869, 1874 (2006). The

Eighth Circuit, applying the Supreme Court's decision in *Sereboff*, held that a claim by a fiduciary of an employee welfare benefit plan met the requirements for equitable restitution where it seeks "(1) specific funds it is owed under the terms of the plan . . . (2) from a specifically identifiable fund that is distinct from [defendant's] general assets; . . . and (3) that is controlled by defendant, the trustee." *Administrative Committee of Wal-Mart Stores, Inc. v. Shank*, 2007 WL 2457664 at *2 (8th Cir. August 31, 2007).

In *Great-West*, the Supreme Court made clear that while some monetary award may be permissible under ERISA, not all restitution satisfies this requirement. 534 U.S. at 213. The award must be calculated based on the gain to the defendant, and that gain must be specifically identifiable. Here, Plaintiffs seek restoration of distinct traceable funds in the Defendants' possession and control. *See Great-West*, 534 U.S. at 213. The funds are allegedly located in the Levin Defendants' IRAs, and are therefore traceable. *Id.* at 207. The measure of damages sought by Plaintiffs is the amount that was erroneously transferred into the Levin Defendants' accounts, and any interest that has accrued thereon. That measure of recovery is based on the gain to the Levin Defendants, not the loss to Plaintiffs. Therefore, the Court concludes that Plaintiffs have stated a claim upon which relief can be granted. Defendants' Motion to Dismiss Count II is denied.

### B. COUNT III

Under Count III of Plaintiffs' Complaint, Plaintiffs allege that the Plan and plan participants have been damaged because of a breach of fiduciary duty by the Trustee Defendants; namely allowing, or failing to prevent, excess distribution to the Levin Defendants. The Trustee Defendants claim that the Plan terms did not give the Trustee Defendants discretionary authority

8

to make distributions under the Plan, and therefore they were not acting as fiduciaries within the meaning of ERISA. In order for the Trustee Defendants to be liable under Count III, the first determination is whether the Trustee Defendants were acting as fiduciaries under ERISA?

ERISA provides that all benefit plan assets are to be held in a trust, subject to the management of trustees. 29 U.S.C. § 1103(a).

> Such trustee or trustees shall be either named in the trust instrument or in the plan instrument described in section 1102(a) of this title or appointed by a person who is a named fiduciary, and upon acceptance of being named or appointed, the trustee or trustees shall have exclusive authority and discretion to manage and control the assets of the plan . . . .

29 U.S.C. § 1103(a). This exclusive authority applies

> except to the extent that -- (1) the plan expressly provides that the trustee or trustees are subject to the direction of a named fiduciary who is not a trustee, in which case the trustee shall be subject to proper directions of such fiduciary which are made in accordance with the terms of the plan and which are not contrary to this chapter, or (2) authority to manage, acquire, or dispose of assets of the plan is delegated to one or more investment managers pursuant to section 1102(c)(3) of this title.

29 U.S.C. § 1103(a)(1)&(2). ERISA also provides a statutory definition for the term fiduciary. 29 U.S.C. § 1002(21)(A). This definition states that:

> a person is a fiduciary with respect to the plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

The parties disagree over whether the ERISA definition of fiduciary is applicable, when the defendant is a trustee. Plaintiffs rely upon the regulations to support their position that the

role of trustee, by is very nature, is that of a fiduciary, and therefore trustees are obligated to comply with ERISA's fiduciary obligations. The Trustee Defendants rely upon Eighth Circuit case law, which requires that in order for an individual to be a fiduciary, they must have discretionary authority. The Code of Federal Regulation states that:

> some offices or positions of an employee benefit plan by their very nature require persons who hold them to perform one or more of the functions described in section 3(21)(A) [29 U.S.C. § 1002(21)(A)] of the Act. For example, a plan administrator or *a trustee* of a plan must, be [sic] the very nature of his position, have 'discretionary responsibility in the administration of the plan' . . . . Persons who hold such positions will therefore be fiduciaries.

29 C.F.R. § 2509.75-8. This provision seems to imply that regardless of limitations imposed by the plan, trustees are fiduciaries by the very nature of their position as trustees. However, the Eighth Circuit, in *Maniace v. Commerce Bank of Kansas City*, held that the defendant trustee did not have discretion in making investment decisions, and therefore was not a fiduciary with respect to that function, relying on the ERISA statutory definition in reaching this result. 40 F.3d 264, 267 (8th Cir. 1994). The Eighth Circuit specifically held that:

> While the current Trust document granted general powers to Commerce [defendant trustee], paragraph 5 of that document explicitly limits Commerce's discretion vis a vis JSC stock. Commerce had no discretion and could only act at the direction of the Committee. As such, Commerce could not be a fiduciary (nor breach fiduciary duties) with respect to the JSC stock.

*Id*. The Eighth Circuit, in reaching this determination, emphasized that "discretion is the benchmark for fiduciary status under ERISA. *Id.*; *see also Johnson v. Paul Revere Life Ins. Co.*, 241 F.3d 623, 632 (8th Cir. 2002) ("Discretion is the benchmark for fiduciary status under ERISA pursuant to the explicit wording of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)." (internal quotation omitted)); *see also Martin v. Feilen*, 965 F.2d 660, 669 (8th Cir. 1992) ("[O]ne who is

10

an ERISA fiduciary only by reason of § 1002(21)(A) is liable only 'to the extent' he exercises discretionary control, renders investment advice, or has discretionary administration responsibilities."). Furthermore, "a fiduciary for a plan is not necessarily a fiduciary for the entire plan." *Maniace*, 40 F.3d at 267. Therefore, it is necessary to determine "whether a person is a fiduciary with respect to the particular activity in question." *Id.*

While the position of trustee is generally assumed to grant the holder discretionary authority, such authority is not required under ERISA. 29 U.S.C. § 1103(a)(1) & (2) allow the terms of the plan to limit the authority and discretion generally granted to a trustee. In the case at bar, the plan language itself removes all discretionary authority, in making distributions, from the trustee;

> The Trustee shall have no discretion with respect to making distributions under the Plan and shall make distributions only at such times and in such manner as the Plan Administrator directs. The Trustee shall have no responsibility to ascertain whether such directions of the Plan Administrator comply with the plan.

*Pls.' Compl.*, Ex. 1, p. 42. The terms of the plan expressly limit the Trustee Defendants discretion, and require them to make distributions in accordance with the instruction they receive from the plan administrator. Therefore, the Trustee Defendants were not fiduciaries with respect to making distributions and therefore cannot have breached a fiduciary duty. Defendants' Motion to Dismiss Count III is granted.

## V. CONCLUSION

Based on the foregoing reasons, Defendants' Motion to Dismiss Count II is denied. Plaintiffs have alleged a valid claim for restitution against the Levin Defendants. However, the Plaintiffs have not alleged a valid claim against the Trustee Defendants under Count III. The

11

terms of the plan conclusively state that the Trustee Defendants had no discretion under the plan, and therefore Plaintiffs cannot succeed on a claim for breach of fiduciary duty. Defendants Motion to Dismiss is granted as to Count III.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss Counts II and III [doc.#9] is **GRANTED in part** and **DENIED in part**. Count III against Defendants Robert Levin, Donna Truka, and John Crawford is **DISMISSED**. Count II against Defendants Robert Levin, Kay Levin, and Thomas Levin remains pending.

Dated this 5th Day of November, 2007.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE